No. 21,965.

G. W. Gates and T. S. Breckenridge, Partners, etc., *Appellees*, v. The Little Fay Oil Company and J. E. Crosbie, *Appellants*, and The Independent Torpedo Company, *Appellee*.

SYLLABUS BY THE COURT.

1. OIL WELL—*Action for Price of Drilling—Cross-petition—Demurrer to Evidence Sustained—Leave to Amend Cross-petition Refused—Error.* A demurrer to evidence was sustained on the ground that, although it tended to establish a cause of action, it was not consistent with the pleading of the party introducing it, and an application for leave to amend the pleading to conform to the proof was denied. *Held*, that the pleading was not explicitly in conflict with the evidence, but was merely ambiguous and indefinite, and that in view of circumstances which are regarded as showing that the opposing party was not taken by surprise, the amendment should have been allowed and the demurrer overruled.

2. SAME—*Pleadings—Defendant Described as Corporation—A Partner-ship.* The fact that a company which is described in the pleadings as a corporation, and is made a party as such, and as to the corporate existence of which no issue is raised, turns out to be a firm, not all of the members of which are made parties, is not a ground of de-murrer to the evidence.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed June 7, 1919. Reversed.

*F. J. Oyler,* of Iola, and *F. B. Dillard,* of Tulsa, Okla., for the appellants.

*H. A. Ewing, G. R. Gard, S. A. Gard, Baxter D. McClain,* and *Altes H. Campbell,* all of Iola, and *G. C. Spillers,* of Tulsa, Okla., for the appellees.

The opinion of the court was delivered by

MASON, J.: G. W. Gates and T. S. Breckenridge, partners, brought an action against the Little Fay Oil Company and J. E. Crosbie to recover the agreed price for drilling an oil well. It was admitted that the well had been drilled, and that the price sued for was that agreed upon. The trial was upon a defense and counterclaim set up in the answer, to the effect that while preparations were being made to shoot the well an employee of the plaintiffs carelessly or willfully caused a wire to be dropped into it, as a result of which it was rendered entirely useless. The Independent Torpedo Company was made a party on the application of the original defendants, who will be spoken of hereafter simply as the defendants. The allegation against it was that it had been employed to do the shooting, and that its unskillful conduct in attemping to recover the wire contributed to the destruction of the usefulness of the well. A demurrer to the defendants' evidence was sustained, judgment being rendered against them for the price of drill-ing the well, and they appeal.

The defendants' evidence tended to show these facts: The plaintiffs agreed to drill the well for $1 a foot, the defendants to pay them $25 a day for cleaning it out and what extra work they did after it was drilled, such as shooting, cleaning out, and pumping if necessary. When the well had been drilled, reaching the oil-bearing sand, the defendants arranged with the Independent Torpedo Company to shoot it. The shooter

and the plaintiffs' men began to prepare it for the shot. A shell of nitroglycerine was lowered to the bottom of the well, a wire being attached to it, the purpose being to explode the charge by electricity. A rod some three or four feet long was run through a ring attached to the upper end of the wire to keep it from falling into the well. One of the plaintiffs' men pulled out the rod, and the wire dropped into the hole. Efforts were made to recover it, but it broke, and, while a part of it was pulled up, the rest remained in the well, which had to be abandoned.

In making their own case the plaintiffs had introduced evidence that after the well had been drilled they had nothing more to do with it—that they turned it, together with their rig and men, over to the defendants, who thereafter directed the work; and that the agreement was that the plaintiffs were to receive $25 a day for allowing this use of their material and employees. A witness for the defendants testified that there was not a word said about the drilling rig and the plaintiffs' men being turned over to the defendants for the purpose of cleaning out.

The foregoing statement shows that a vital issue in the case was as to who was in control of the work when the accident occurred. The defendants' theory is that the plaintiffs were doing the work under an agreement that they were to receive $25 a day for it. The plaintiffs' theory is that they merely gave the defendants the use of their rig and men for that price. It is clear that some of the evidence introduced tended to support the defendants' theory. Moreover, a part of the evidence in behalf of the plaintiffs, which has not been recited, had a similar tendency. The trial court did not sustain the demurrer because of any lack in the evidence itself, but expressly based the ruling upon the ground that the allegations of the answer and cross-petition affirmatively supported the theory of the plaintiffs as to the character of the agreement, and therefore cut off the defense and counterclaim undertaken to be proved. The defendants asked leave to amend their pleading to conform to their proof in this respect, but the request was refused, and they complain of this ruling, as well as of that sustaining the demurrer to their evidence. If the original pleading was in fact entirely inconsistent with the defense

Gates v. Oil Co.

attempted, the matter of allowing an amendment doubtless rested so much in the discretion of the court as not to be subject to review; but if it was merely ambiguous or indefinite, the defendants may have been entitled to an opportunity to make it more specific. So much of the defendants' answer as need be considered in order to determine its character in this regard reads as follows, the language bearing more directly upon this question being italicised:

"Defendants, for affirmative relief against the plaintiffs and against The Independent Torpedo Company . . . say that they, defendants, entered into a verbal contract with the plaintiffs to drill and complete a well and *to render such services as were necessary in shooting said well and cleaning the same out;* being one and the same contract, and the well to be drilled upon the land described in plaintiff's petition. The defendants, in said contract, agreed to pay to plaintiffs $1.00 a foot for drilling said well through to oil-bearing sand, *and to pay plaintiffs $25.00 per day for the use and benefit of their machinery and tools, and all labor necessary in preparing, cleaning and shooting said well after the same was drilled through the oil-bearing sand.* Defendants further show that after the well was drilled by plaintiffs through the oil-bearing sand, to a depth of 901 feet, oil was discovered, and the defendants then contracted with the Independent Torpedo Company to shoot said well and contracted to pay it $100.00 therefor, if the same was shot. That the plaintiff and the torpedo company *jointly took possession of said well* and began to prepare the same for shooting; and in such preparations and the acts which followed, said plaintiffs and the Independent Torpedo Company were acting jointly."

The allegation that the defendants were to pay the plaintiffs $25 a day "for the use and benefit of their machinery and tools, and all labor necessary in preparing, cleaning and shooting said well," suggests that this compensation was merely for the use of the rig and workmen, to be employed under the direction of the defendants, but we do not think its language compels that interpretation. The preceding statement, that the plaintiffs contracted to drill and complete a well and "to render such services as were necessary in shooting said well and cleaning the same out," seems to us to have as strong a tendency to the contrary, so that, at most, the pleading as a whole failed to make it clear that the defendants claimed that the agreement was that the plaintiffs were to control the work in connection with cleaning and shooting the well, and not merely to permit the use of their rig and employees by the

4—105 KAN.

defendants. The plaintiffs can hardly have been taken by
surprise by the assertion of this claim, for one of them testi-
fied that shortly after the wire had been dropped he had a talk
with a representative of the defendants in which each asserted
that the men were working for the other. The controversy as
to who had charge of the work was the foundation of the law-
suit, so far as the counterclaim was concerned, and that was
the only matter in dispute. The amendment which the de-
fendants asked leave to make was the substitution, for the
second italicized passage in the foregoing quotation, of the
words "and to pay plaintiffs $25 a day for  .  .  .. clean-
ing out and shooting said well after the same was drilled
through the oil-bearing sand." It seems fairly clear that this
is in effect what the defendants meant from the first, and that
their failure to make their intention plain was the result of
inadvertence, and not of design. We believe that the likeli-
hood of substantial justice being done will be best promoted
by a reversal of the judgment in order that the facts in con-
troversy may be determined upon a trial on the merits.
Rulings refusing to allow a pleading to be amended to con-
form to the evidence have not infrequently been held errone-
ous, notwithstanding the wide latitude allowed in such mat-
ters to the trial court. (*Wright v. Bacheller,* 16 Kan. 259;
*Wait v. McKibben,* 92 Kan. 394, 140 Pac. 860.) Here, how-
ever, the question is not one of abuse of discretion. The re-
fusal of the amendment was based upon a construction of their
answer which was fatal to the defendant's recovery, while
this court concludes that such construction can be avoided by
making use of that great liberality of interpretation accorded
to a pleading which has not been attacked by motion.

2. In the demurrer to the defendants' evidence, filed by the
Independent Torpedo Company, a defect of parties defendant
was assigned as one of the grounds, the reference doubtless
being to the fact that, while the Little Fay Oil Company was
described in the pleadings as a corporation, the evidence
tended to show that it was a partnership composed of four
members, the defendant Crosbie being one, and the others not
having been made parties. No issue appears to have been
raised by the pleadings as to the corporate existence of the
company referred to. In the title of the case in all the plead-

ings, and in the body of the answer of the torpedo company, it was described as a corporation, although nowhere was a direct allegation made that it had been incorporated. These considerations render the evidence on this subject immaterial, even if the omission of a necessary party would otherwise be a ground for demurring to the evidence; but any objection in this regard can be avoided by bringing in the additional parties before a trial on the merits.

The judgment is reversed, and the cause is remanded with directions to allow the answer to be amended, and for further proceedings in accordance herewith.